**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SEAN ZIADEH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16 C 2914 |
| | ) | |
| v. | ) | Judge Leinenweber |
| | ) | |
| 30 EAST ELM CONDOMINIUM | ) | Magistrate Judge Cox |
| ASSOCIATION and CHICAGOLAND | ) | |
| COMMUNITY MANAGEMENT, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT**

1.      This is a fair housing case. Sean Ziadeh owns a condominium in Chicago. He is legally blind, able to read only very large text, and even then, only if keeps his eyes within centimeters of that text. Ziadeh's blindness has led to two problems with his condo building. First, he was unable to read important notices sent from building management. Second, his peephole—the hole in his front door with a view of the hallway—was useless to him.

2.      To solve these problems, Ziadeh asked his condo association, 30 East Elm Condominium Association, and its management company, Chicagoland Community Management, for help. First, he asked for a reasonable accommodation regarding building notices, requesting that they be emailed to him so that he could read them with the aid of a computer and other adaptive devices. Second, he asked for permission to reasonably modify his front door by installing, at his own expense, an electronic peephole that would enable him to

see who was at his front door. The Association and Chicagoland said they would email notices, but didn't. They denied Ziadeh's peephole request outright.

## II. Jurisdiction & Venue

3. The Court has subject-matter jurisdiction over Sean Ziadeh's federal Fair Housing Act claims under 28 U.S.C. § 1331 because they arise under federal law.

4. The Court has subject-matter jurisdiction over Ziadeh's negligence claim under 28 U.S.C. § 1367(a) because it arises from the same events as Ziadeh's federal claims.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(a) because both defendants reside in this judicial district and almost all the events giving rise to the claims occurred here.

## III. Parties

6. **Plaintiff Sean Ziadeh** is a natural person who owns condominium 7F at the 30 East Elm Condominium Building and resides there and in Michigan.

7. **Defendant 30 East Elm Condominium Association** is an Illinois corporation established under the Illinois Condominium Property Act, 765 ILCS 605.

8. **Defendant Chicagoland Community Management, Inc.** is an Illinois Corporation with its principal place of business in Chicago, Illinois.

### IV. Allegations

### A. Sean Ziadeh

9.     Sean Ziadeh is legally blind; accordingly, he is a person with a disability within the meaning of the Fair Housing Act, 42 U.S.C. § 3602, and 24 C.F.R. § 100.201.

10.     With correction, Ziadeh's vision is at best 20/300 in the right eye and 20/200 in the left.

11.     Ziadeh's vision profoundly impacts his life. Because of his vision, he can only read printed words if they are very large, within a few centimeters of his eyes, and using various adaptive devices.

12.     To read, Ziadeh uses a large computer screen and a pair of very strong prescription magnifying glasses. Even with that help, Ziadeh must still put his face within centimeters of the screen to read, moving his entire head along with the text.

13.     Around 2010, Ziadeh bought and begin to live in condominium 7F at 30 East Elm in Chicago.

### B. 30 East Elm

14.     30 East Elm is a 20-story, 126-unit condominium building in Chicago.

15.      The building is managed by the 30 East Elm Condominium Association, which acts through its elected board of directors.

16.     The Association employs Chicagoland Community Management to operate and manage the condominium on behalf of the board. The Association

and Chicagoland communicate with residents via written notices. Some notices are mailed. Some are left outside residents' doors. And some are posted around the building, including on various bulletin boards.

17.     Most notices sent or posted by the Association or Chicagoland are printed in font too small for Ziadeh to read, posted in places he cannot get his eyes near enough to to read, or both.

### C. Ziadeh's Reasonable Accommodation Request

18.      In Fall 2013, Ziadeh asked the Association and Chicagoland to send him by email Association board meeting agendas and minutes as well as any notices posted on the building's bulletin boards.

19.     Ziadeh made this request in a series of emails to Chicagoland's onsite property manager, who acknowledged Ziadeh's requests.

20.     The property manager wrote back saying that she would email the agendas, minutes, and notices to Ziadeh.

21.     At first, the property manager emailed some of the agendas, minutes, and notices to Ziadeh as promised.

22.     But by April 2014 Ziadeh stopped receiving notices by email.

23.     This was very concerning to Ziadeh because the Association was considering at that time a major renovation project that, if approved, would create a large expense for owners like Ziadeh. Ziadeh wanted to be sure to attend the meetings.

24.     After missing at least one notice about these meetings, Ziadeh sent an email to the onsite property manager reiterating his request that all notices be emailed to him.

25.     Two days later, Ziadeh stopped by the onsite manager's office to repeat his request and also followed up by email.

26.     The follow-up email told the Association and Chicagoland that Ziadeh has been blind since birth and specifically used the phrase "reasonable accommodation" to refer to his request that "any and all correspondences intended to be provided to or seen by owners and occupants of the building be emailed" to him.

27.     The email attached a note from a doctor regarding Ziadeh's blindness.

28.     A little more than a week later, Rosario de Brun, the Association board president, wrote back by email: "the Board and management has at all times made every effort to accommodate your needs and will continue to do so. To that end, and in response to your email of May 30 demanding reasonable accommodations, I have asked management to have the Association's law firm address your demands."

29.     Patricia O'Connor, the association's lawyer, sent Ziadeh a letter three weeks later, acknowledging Ziadeh's request, questioning whether he is really blind, and saying that "the Board has instructed management, as a courtesy, to provide you with notices and communications via email."

30.    But following the lawyer's promise, the Association and Chicagoland failed to send Ziadeh all the notices and communications via email.

31.    From other residents, Ziadeh learned that the Association and Chicagoland failed to email him several notices that other residents received or saw posted.

32.    By failing to send the notices to Ziadeh by email, the Association and Chicagoland failed or refused to reasonably accommodate Ziadeh's disability.

### D. The Dust Infiltration

33.    One of the notices that Chicagoland and the Association promised to email to Ziadeh but didn't concerned dust.

34.    The notice told residents that contractors would shortly be grinding mortar on the outside of the building.

35.    The notice also told residents to take several precautions—cover their air conditioners, tightly shut their windows, etc.—to avoid dust infiltration.

36.    Chicagoland and the Association were aware that these precautions were necessary to prevent dust infiltration.

37.    And Chicagoland and the Association were aware, at the time of the mortar work, that Ziadeh needed to have notices delivered by email.

38.    By the time of the mortar work, Chicagoland and the Association had repeatedly told Ziadeh that they would provide him notices by email.

39.    The notice about the dust precautions is of the type that Chicagoland and the Association had told Ziadeh they would send by email.

40.     But Chicagoland and the Association did not send Ziadeh the dust notice by email.

41.     Nor did Chicagoland or the Association attempt to inform Ziadeh about the necessary precautions some other way.

42.     So Ziadeh did not learn about the necessary precautions and did not take those precautions.

43.     As a result, dust infiltrated his unit.

44.     Ziadeh was home when the dust infiltrated his unit.

45.     As a result of the dust infiltration, Ziadeh got sick and went to the emergency room.

### E. Ziadeh's Reasonable Modification Request

46.     Prior to the dust incident, but a few months after O'Connor sent Ziadeh the letter about his reasonable accommodation request, Ziadeh made a reasonable modification request. He asked for permission to reasonably modify his front door by installing an electronic peep hole.

47.     Ziadeh emailed the onsite property manager—the same one to whom he had emailed his reasonable accommodation for notices by email—asking for permission to install an electronic peephole.

48.     An electronic people replaces the glass peephole commonly found in the front doors of apartments, condos, and hotel rooms. An electronic peephole magnifies the view that a person with healthy sight would see and projects it onto a screen. From there, it can be enlarged and brightened for those with poor sight.

49.     Ziadeh's email explained that the existing peephole was "too small and dark to look through."  Ziadeh's email also included links to websites for the two peepholes he was considering. Each cost about $100. They looked like this:

 

50.     A few days later, the manager wrote back, saying that she needed to consult the Association's board.

51.     Three weeks later, the manager wrote again, saying that "the Board reviewed your request at the Board Meeting held on September 24, 2014, to alter the entry door of your unit by installing an electronic peephole. The Board has denied your request."

### F. Ziadeh's Injuries

52.     By their negligence, by failing to reasonably accommodate Ziadeh, and by failing to allow Ziadeh to reasonably modify his peephole, the Association and Chicagoland injured him. The refusals themselves caused Ziadeh emotional distress and humiliation. Ziadeh was left feeling powerless and frustrated that he could not control or improve his living situation. He also suffered great stress at not knowing whether he was getting information about what was happening at the building. And he lost the full use and enjoyment of his condo. The Association and Chicagoland's negligence also caused Ziadeh the pain and

suffering he experienced from the dust infiltration. For these reasons, Ziadeh is entitled to compensatory damages.

53.     The Association and Chicagoland still have not reasonably accommodated Ziadeh or allowed him to reasonably modify his peephole. Accordingly, Ziadeh is entitled to injunctive relief.

54.     The Association and Chicagoland, in failing to reasonably accommodate Ziadeh and to allow him to make a reasonable modification, have done so in reckless disregard of Ziadeh's federally protected rights. Accordingly, Ziadeh is entitled to punitive damages.

55.     There now exists an actual controversy between Ziadeh on the one hand and the Association and Chicagoland on the other as to the latters' duties under federal law. Accordingly, Ziadeh is entitled to declaratory relief.

### V. Claims

### A. Count I
### [Fair Housing Act]
### Reasonable Accommodation

56.     Ziadeh realleges and incorporates here each preceding paragraph.

57.     By refusing to make a reasonable accommodation in their policies, practices, and services regarding building notices, the Association and Chicagoland have violated 42 U.S.C. § 3604(f)(3)(A).

## B. Count II
## [Fair Housing Act]
## Reasonable Modification

58.     Ziadeh realleges and incorporates here each preceding paragraph.

59.     By refusing to permit Ziadeh to reasonably modify his door to include an electronic peephole, the Association and Chicagoland have violated 42 U.S.C. § 3604(f)(3)(A).

## B. Count II
## [Illinois Law]
## Negligence

60.     Ziadeh realleges and incorporates here each preceding paragraph.

61.     Chicagoland and the Association negligently failed to inform Ziadeh about the January 2015 mortar work and of the precautions he needed to take to avoid dust infiltration into his unit.

62.     Because of this negligence, Ziadeh suffered pain and suffering and emotional distress.

## VII. Prayer for Relief

Sean Ziadeh prays for entry of a judgment against the Association and Chicagoland that:

1.     Awards compensatory damages under the Fair Housing Act, 42 U.S.C. § 3613(c) and Illinois Common Law;

2.     Awards punitive damages under the Fair Housing Act, 42 U.S.C. § 3613(c) and Illinois Common Law;

3.     Declares that both defendants violated the Fair Housing Act, 42 U.S.C. § 3604(f);

4.     Enjoins both defendants' unlawful practices and imposes on them affirmative obligations designed to ensure that they provide discrimination-free treatment to all those they encounter;

5.     Awards costs and a reasonable attorneys' fee; and,

6.     Awards all other relief that the Court deems just.

Dated: May 20, 2016

Respectfully submitted,


/s/ Thomas Kayes
Thomas Kayes
Attorney for Plaintiff

Thomas Kayes
BRANCART & BRANCART
77 West Washington, Suite 1313
Chicago, Illinois 60602
tel: 312.857.8665
fax: 650.879.1103
tkayes@brancart.com

**Certificate of Service**

On May 20, 2016, by email and regular mail, I served the:

**First Amended Complaint**

on the attorneys for the parties named below:

Kristine S. Phillips
Ryan Benson
O'Hagan LLC
1 East Wacker, Suite 3400
Chicago, Illinois 60601
kphillips@ohaganlaw.com
rbenson@ohaganlaw.com

/s/ Thomas Kayes

First Amended Complaint - 12 of 12